23-1642 Good morning, Your Honor, and may it please the Court. Amit Agarwal, appearing on behalf of Appellant NVR, and I'm pretty sure no one ever described me as the Chamber's favorite. It's a story for another day. If it's all right with Your Honor, I'd like to reserve about five minutes of rebuttal time. Five minutes is great. So unless the Court would prefer otherwise, I'd like to start out by first addressing the question that this Court posed to counsel in its recent letter, and that question was whether plaintiff's motion for treble damages was untimely within the meaning of certain italicized language that this Court flagged in federal appellate rule 4A4. We've given a lot of thought to that question in preparation for this argument. We have a three-part answer for the Court's consideration, and if you're agreeable, I'll just state our position up front, and then we'll be happy to either— I'm happy to flesh out the details or to move on to the merits as Your Honor's prefer. No, no, no. We're concerned about both sides. Yes. Please do. I appreciate that, Your Honor. And so the first part is that based on the language that the Court has appropriately identified, we think that the more natural reading of the text is that plaintiff's motion for treble damages was untimely filed not just for purposes of federal rule of civil procedure 59E, read in light of civil procedure rule 6B2, but also that that would map on to federal appellate rule 4A4. How is it more natural? Is it straightforward? The reason that it's not 100% clear, Your Honor, is because we would argue that rule 4A4 tells you what happens when you have X, and it doesn't—the converse doesn't necessarily hold true, and that is to say it doesn't necessarily tell you exactly what happens when you don't have X, but you have something really, really close to it, and I could talk about those circumstances. It would get a little complicated, but we think there's an easy way out of this, and that is to move on to number two, and that is that rule 4A4, which again— When you say X, do you mean the difference between 59E and 60A? No. Okay, all right. Okay. No, I don't. Yeah. Go ahead. And it does get kind of complicated. I don't want to inflict too much technical argument on you. No, no, no. This is serious, and we love doing this stuff. Okay. So I think because the Court has appropriately identified rule 4A4 as the operative provision, what we would suggest is that there's a superabundance of authority holding that rule 4A4 is a claims processing rule, not a jurisdictional rule. It's therefore subject to forfeiture. Why does it matter? Because your adversary objected, so either way. Yeah, and so it's a good point, Your Honor. They objected, but they have waived, not just forfeited, but waived any argument that their own motion for treble damages was untimely filed. And that's a waiver that appears, for example, on pages three and five of their answer brief to this Court, where they say- Why does their waiver of that make any difference to our jurisdictional argument? So the reason that it makes a difference, we think, Your Honor, is that plaintiffs should not now be allowed to benefit from an argument that they waived, and that argument would be that their own motion for treble damages was untimely filed, and they get to hold on to the treble damages, and defendants should be penalized for- we should lose our statutory right to appeal. Why? Because plaintiffs filed an untimely motion for treble damages where they have waived that argument, not once, but twice, first- But, Mr. Garber, while they did file their motions pursuant to the district court's order, NBR clearly knew that the rule was 28 days. NBR filed their motion for judgment as a matter of law, and for a new trial, timely, on the 28th day. And NBR was clearly aware of Rule 6 prohibiting the extension of a 50-90 deadline. So it's not as if, you know, you had very learned attorneys who were aware of the rules and who could have objected at the time the deadline was entered, and instead chose to challenge it afterwards, and, you know, you live with your choices, do you not? So we absolutely live with our choices, and I think Your Honor raises a lot of fair points. I agree with most of them, except for that last part about whether defendants clearly knew about 6b2. I think what we know from the record is that NBR knew that there's ordinarily 28 days from the entry of judgment to file the post-trial motion. We know that because NBR actually did object to the timeliness of plaintiff's motion for pre-judgment interest and post-judgment interest, and then— They decided to rule 6 in doing so. Okay, but did not—and so I think the question here is whether NBR understood that when the district court puts on the docket a piece of paper prior to the entry of judgment, and that—we think that timing consideration is important because the district court scheduling order—and you'll find this at Docket Entry 83—says, in terms that are about as clear as the English language will allow, that I, the district court, think that there's work yet to be done before we get to a final judgment from which parties take an appeal, and I'm expressly saying that plaintiffs may file their motion for tribal damages on or before October 24, 2023. And what's happening is NBR is relying on that piece of paper that's on the docket, and we're relying in good faith on the assumption that the district court can manage its own docket. Now—and we're also relying in good faith on the assumption that plaintiffs are not arguing that their own motion for tribal damages is untimely filed, because if they hadn't—and this is an important consideration—if plaintiffs had shown up at any point in the last two years— So are you arguing that that filing created some unique circumstances? Yes, absolutely we're arguing that, and our argument doesn't—you don't have to go there, Your Honor, because you can just rely on waiver. You don't even have to invoke the doctrine of unique circumstances. What you can say is, under authority from the Supreme Court and this Court, a claims processing rule is absolutely subject to forfeiture. Here you don't just have a forfeiture. You've got a double waiver. You've got a waiver in the district court. Why? Because plaintiffs ask for relief and get that relief on their own motion for tribal damages and never say a word about our motion is untimely filed. And then you've got another waiver in their answer brief to this Court where they say again on pages 3 and 5, categorically and unequivocally, that their own motion is sufficient to, quote, extend the time for filing a notice of appeal under Rule 4A.4, which is exactly the provision that this Court identified in its letter to the counsel. Does the amended judgment have any impact here on the ability to appeal? So I'm really glad that Your Honor raised that point because I think at a minimum, there either is or is not a judgment that validly gives effect to the order granting plaintiffs motion for tribal damages. Does that amended judgment bootstrap the other things that you... So we would argue that it does, and if the Court has any doubt about that, we would really welcome an opportunity to file supplemental briefing on that. We've never had any opportunity to brief these issues up for the Court's consideration. Let's have some briefing on that then, okay? Marina, maybe we can put a letter out. Let's have counsel talk about the effect of the amended judgment. How about... Okay? We would welcome that. Let's go with, how about five pages, something like that? Does that work? Okay, great. Give you two weeks. Okay. And may I move on to the merits, or would you like me to... No, I'm interested in what you have to say about the amended judgment. Oh, yes. What happens. I mean, I think it's a little bit of a slippery slope. You're probably aware that Rule 3 was amended recently in 2021, and it's a slippery slope in the respect that if the District Court keeps amending the judgment, let's say, at the behest of the parties, you know, either denying or granting some extra relief in an amended judgment, it seems to me that all of these deadlines would just be for naught. You could just... You could always just... Let's go on the initial, say, judgment that reflected the jury verdict or whatever. How do you... How does the... I mean, maybe I'll ask you now, knowing that you'll be briefing, but how does the amended judgment work here? So I would say two things. Okay. One, at a minimum, we have to have a right to challenge the trouble damages. And if the legal argument against the trouble damages is identical to the argument against underlying liability under the CPL, then the trouble damages award is out. And that's why, by the way, that's why plaintiffs have never in the last two years stood up and told either the District Court or this court that their own motion for trouble damages is untimely filed, because they would lose most of the money that they get under this judgment. They don't want to do that. That's why they've waived it. And that's why we think the court should give effect to their waiver. But the second answer to your Honor's question is we do think that it's fair to say if you have jurisdiction over an appeal about the propriety of trouble damages, and if our brief has fairly explained why there should not be any underlying liability under the CPL, the court, in those unique circumstances, on top of the five circumstances we could delineate in supplemental briefings, some of which I've adverted to today, the court absolutely, we would say, has discretion in those circumstances to reach the inextricably intertwined question of whether liability under the CPL is proper in the first place. I see my time is running out. I think the door is too wide. Potentially, the door is too wide. I emphasize potentially. I'll wait to read your brief on the amended judgment argument. Yes. But the unique circumstances argument seems to be a more narrow door that if you could, I know you alluded to confusion in your brief, but I'm not quite sure I understand exactly what it is that you described is the confusion that would trigger unique circumstances. So I'll take an initial stab at that if you'd like. Yes. And then we'll brief it out more in supplemental briefing. And so what we're relying on is in part Docket Entry 83, in which the district court says this is prior to the entry of its judgment, where the district court says plaintiffs can file any petition for additional remedies under the CPL on or before October 24, 2022. And that is exactly what plaintiffs did. And defendant relied in good faith on that piece of paper, which is never withdrawn. So what winds up happening is the district. When you clearly knew that the deadline was 28 days and that it could not be extended. You filed your motions in a timely manner on the 28th day and in moving to, I guess, strike their motion and say that it was untimely. You specifically cited and when I say you, I mean, yes, explicitly cited Rule 62. So how is that reasonable reliance? You knew that it couldn't be extended. I could give you a lot of legal technicalities, but I can also give you a common sense answer to that question that cuts through the legal jargon. And the common sense answer is NVR. My client is nice, but they're not that nice. And if they thought for a second that they could stand up and say, district judge, the motion for travel damages is untimely. They would have stood up and said, you should summarily deny it as untimely filed. And so the fact that they didn't do that, I think proves. Proves that we believed that the district court had the authority to manage its own docket and to extend the time for filing a motion for travel damages until October 24. That's particularly reasonable because at the time that the district court entered its order, it was not ultra virus. It was not void ab initio. It's a hundred percent valid exercise of the district court's considerable discretion to manage its own docket. And then the only question becomes, does the district court's decision to sue a sponte, subsequently enter a paper that is denominated a judgment, have the effect of retroactively sub salientio without any notice to any party, vitiate that a part of that prior scheduling order that is still on the docket and still says plaintiffs, you can file your motion on or before October 24. And if we had thought for a second that they couldn't, we would have stood up and said. What's the authority for the district court to be able to do that? So the authority at the time that it entered the order is that it doesn't even trigger rule 59 because there's no judgment yet. But it was already entered. The judgment was entered on a jury verdict on September 22nd. It's ordered after the district court enters its order, setting the deadlines for filing the motion for trouble damages. Which was filed first. That's exactly my point. I think that's a really important consideration. What's filed first is the order that says any remedy under the CPL can be filed on or before October 24th. And your honor, one more point here. That's not even just a piece of paper that the district court puts on its docket. That is an order that is memorializing a prior oral decision that was communicated to counsel at the very end of the trial. And you'll find that on the last two pages of the trial transcript. Was it an order or a text only order? It's a text only order. Not that that necessarily makes a difference. I think that's right. I understand your argument. I would love to talk about the merits if you'd like. We'll get you on rebound. Okay. Rebuttal. Sorry, rebuttal. Rebound. Watching too much hoops. Watching basketball yesterday. Go ahead. May it please the court. Lydia Gorba on behalf of Laura Katina and Gregory Novotny. Like counsel, I will address the jurisdictional issue first. We view this as a very mechanical application. Judge Tong raises a great point. They knew that they needed to file within 28 days. The rule is very clear. The language of the rule was amended in 2016. And the note or the committee advisory note on the 2016 amendment actually says a motion made after the time allowed by the civil rules will not qualify as a motion that under rule 4A4A restarts the appeal time. And that fact is not altered by, for example, a court order that sets a due date that is later than permitted by the civil rules. There are no exceptions as I understand the law. I see that it has been rule 4A4 has been mechanically applied. It was applied by this court in Lozardo. But counsel argued that this order extending the filings under the CPL gave your clients the opportunity to file something until the 24th. So isn't there some authority for that? Us viewing that as postponing the effective date of the filing of the judgment? No, I don't believe so. Again, I see rule 4 as a mechanical application. It is to, the language was clarified in part, to provide predictability in the appeal timeline. If you don't file those motions below within 28 days, they do not act to toll the appeal period. And that makes it clear when you need to appeal. The only motion timely filed for purposes of rule 4's tolling function below in this case was NVR's motion for judgment as a matter of law. That motion was rolled upon on January 9th, 2023, making NVR's appeal deadline February 8th, 2023. They did not appeal until April 6th. What about their argument that you forfeited this argument? That is not the law. There is nothing that we can say or not say that creates or takes away jurisdiction. This court has to find jurisdiction. They said that on pages 3 and 5, you waived actually your arguments. How do you respond to that? I respond to that by stating that there was no waiver. That cannot be a waiver. If nothing that the district court does in a criminal case that the clerk's office does below, that can provide additional tolling here, or that can be considered on an equitable basis, a line in a brief filed two months ago cannot similarly have any effect on that appeal deadline. There was no waiver to toll NVR's appeal period. For jurisdictional or claims process? It doesn't make a difference is our position, whether it's claims. Circumstances to the extent that that's still alive. So what is your position? We would argue that Bowles v. Russell makes that not a live position. There should, there are no equitable considerations with respect to your time within which to file an appeal. Courts have not ruled to date because they haven't had to get there. It's my understanding that it's not clear in the law, whether it is a jurisdictional or a claims processing rule, but the courts have held that regardless, it doesn't mean that for a four is not mandatory and enforceable. Let's assume we are the first court. How should we decide rule four is jurisdictional. There's no room similar to the holding in Bowles v. Russell for any equitable considerations. And many of these cases where courts, the third circuit has dismissed appeals are criminal cases where there's maybe clerk's office errors and prison delays. And there have been no equitable considerations there. We argue that there shouldn't be in these circumstances. But what makes something jurisdictional according to Bowles is whether or not a statutory deadline is invoked and what statute is invoked by 4A4? I would argue that rule four in its entirety is jurisdictional. And that's what Bowles says. Yeah. I would direct your attention to the Supreme court decision in 2017, which postdated Bowles v. Russell, Hamer v. Neighborhood Housing Services, Chicago, which says that a provision governing a time to appeal on a civil action qualifies as jurisdictional. Only if Congress sets the time, a time limit not prescribed by Congress ranks as a mandatory claim processing rule. And my argument would be that it is mandatory and that it is enforceable. And this court has enforced it and has applied it. It's missing many in appeal. And in 2018, our court, or in 2008, uh, our court said that, uh, the unique circumstances doctrine, uh, could apply to claim processing rules. So there is that, you know, there is that fine area. I understand your honor. I would argue that this is not unique circumstances. Um, to judge Chung's point, NVR knew that it was 28 days. The rule language is clear. NVR needed to pull up a calendar and pull up the docket and see when things were filed. And if they weren't filed within 28 days for the plain language of the rule, they did not act to told the appeal period. Um, we consider that the beginning and the end of the case, uh, on appeal, we would ask that it be dismissed on jurisdictional grounds. How about the amended judgment? Uh, what, what does that, what effect does that have on the claims that are properly before us? We don't think that it does have an effect. I mean, the treble damages and the attorney's fees. I mean, those issues weren't appealed. I mean, they aren't before you on appeal. Um, and if that were to, to your point, uh, have an impact, it would be a slippery slope and it would be unclear what the appeal deadline is. Again, I understand the amendments to rule for being strapped to take all predictability before that. It was not timely, I guess, according to you, um, that would allow you to appeal everything. Right. If, if we, depending on how we construed that and then the judgment, right. Sure. Okay. Um, as to the merits, uh, of the claim, um, I think we covered everything on, uh, jurisdiction. Again, we believe it's a mechanical application. We don't believe there was any waiver. Um, and, you know, NBR saying that they, uh, relied on the court's judgment below was just, uh, quite the risk to take in face of the rule language. Um, and in face of the state of the law, as I understand it, um, as to the merits. NBR, um, as the losing party below had the opportunity to frame the issues for you on appeal, but we would suggest that you not necessarily view them as NBR has, um, suggested. So this case NBR wants you to believe is about luxury and it's about puffery and justifiable reliance, but really it's a warranty case. There was ample testimony at trial related to warranty claims, construction defects. We had Dr. Bert Davis and John Domeno, Laura and Greg's experts at trial, um, go item by item and testify to the deficiencies. We boarded. 146,462 dollars and 40 cents in damages, representing strictly the cost to fix the house. And that is what was awarded. Okay. Let me, I just want to be clear. Sure. As far as what was covered by the warranty, it seems to me that some of the claims made, um, are not. So I'd just like to hear your position on that, that the NBR failed to provide stone to grade water pressure, low yard composed of substandard Rocky top soil, privacy trees front door had extraneous holes. Soil and foundation is defective. None of those appear to have been covered by the warranty. Is it your position that they were, that it was my careful reading and the record, um, that those are not covered by the warranty. What is your position? We would argue that it was a bumper to bumper. I believe Ryan Brogdon testified to that effect warranty and that it covered all of the home defects, um, that were covered at trial, that they should have fixed those things. Um, and many of those things at the very least they conceded a different question than whether or not they're actually enumerated under a warranty. Can you point, if those in fact are covered by the warranty, are they one year, two years, 10 year where in the record can I see that those are covered by the warranty? It would be primarily the one year warranty in this case. And what, what, uh, clause, the one year warranty, what covers those items? I do not have the specific language in front of me right now of the warranty provision. Um, but that was the argument that we made at trial. And that was what the jury determined, um, that they were warranty violations. They're all warranty under just of the action. What is the broader social duty owed to all individuals asserted here? That makes it not covered by just a bit. We think that Earl squarely addressed this issue. Um, only a couple of years ago, it did the contract. Well, it wasn't addressed by the court in Earl's. So I solely look just to where the promises were. They did not rule on whether the integration cost didn't apply and Yaka seems to control that. Does it not? No. Yaka is significantly different from this case. I would argue in Yaka, the holding was two part. Essentially the court said, you can't prove justifiable reliance. If two things are true, if the contract deals with the specific misrepresentations and there's an integration clause here, the contract doesn't deal with the misrepresentations and Yaka, the court had, you know, had a hard time or struggled to, um, find that the reliance was justified because the contract dealt with the seating locations. Um, and the plaintiffs in that case, they claimed that they relied upon old seating charts in the brochure where the contract dealt with the seating locations. The contract here doesn't deal specifically. There's no contradiction with what was relied upon. And here also where it's different is that when you're buying one of these homes, you're buying a lot. So you have to trust in these risks, these representations that you're going to get what you're paying for. What are you buying? If you're not buying a luxury home, you have to trust that that's going to happen. And NVR zone representative, Matt Dermier, the warranty manager at trial, um, testified that NVR promises luxury. Um, and that that creates one further, that that creates an expectation in these buyers because it has to, or you wouldn't. The gist of this appeal, as I see it is really over the treble damages, uh, because they didn't appeal from the $142,000, uh, judgment, the underlying judgment per se, uh, why? And you got treble damages under the CPL. Why wasn't the CPL governed by the one year statute? My understanding is that the treble damages and that the attorney's fees awards, um, are not being appealed in this case. Um, but the underlying merits judgment is being appealed. Could you, I'm sorry. Could you ask that question again? I apologize. But, but while going back to that question, why, why are, why is not the CPL covered by the statute of limitations? Because it is a separate claim. Um, courts have held that over and over again recently. Um, particularly we believe that saying in Earl, that it's collateral to and tortious, um, means that it is a separate claim that it is not, um, A claim that arises under contract and can be barred by contract provisions. And the statute of limitations provision specifically accepts claims under the limited warranty. It's our position that these unfair trade claims are claims under the limited warranty. Again, every penny was for, um, construction deficiency damages. And that's why it, it should not apply to this case. As far as those claims is not that they, that there is some sort of common law duty owed to all people. It's that a specific misrepresentation was not within the contract. Sure. Yes. I mean, it's, it's, there are misrepresentations here, pre-contract and that, you know, you get a luxury home and then, you know what you actually build, I guess could be different. And there are representations that were post-contract pre-build and post-contract post build. Um, so there were multiple representations here and, you know, the UTP CPL specifically has warranty violations. Um, and that is again, you know, we brought the claims under the warranty violations. Um, and we had ample testimony at trial that the, um, warranties were breached by the different construction deficiencies. Um, and I'll also say as to the statute of limitations at the very earliest, it would have run in March of 2020. And our claims were filed in February of 2020, making them timely. With regard to the luxury. Uh, do you still rely upon that here before us? You seem to be abandoning that and saying, these are all warranty claims. Uh, no, I wouldn't say that I'm abandoning it. I just think that it doesn't, um, warrant if this court is inclined to, um, roll a certain way on the luxury issue. I don't think that it warrants upsetting the verdict in this case and the verdict rested on other things. But frankly, I think the, um, luxury claim that NBR makes here is, is pretty appalling. I mean, they promised these people luxury homes. It's in their marketing materials. The word, the sort of words, luxury, um, good craftsmanship, the classic example of puffing. And it's really in conjunction with the model home that the district court found that it was made specific such that it could go forward. I think you could consider luxury, um, in that way. If you were looking at it in a vacuum, um, but based on the things that the website stated and the things that were actually done or not done here and the looking at the luxury home and, you know, it's, it's part, um, luxury representations and it's part, um, you expect certain things in a new build and no luxury build. NBR sells other homes. They sell Ryan homes that they don't market as luxury homes. So when they're taking your money, they want it to be a distinction with a difference. And now they're saying, well, it's aspirational. The punch list at the end where you specifically say, you know, these are the countertops I want. These are the soffits I want. I mean, there there's a way to specify what luxury, so to speak items you want and which ones are included in the base price. Sure. But the marketing that drives that rather than the actual specifications. So you can't just provide granite countertops and, um, you know, carry them into the home and set them on the floor. Part of it is installation. Um, and that's where more of the warranties come into play in this case, but I'm directing your attention to what makes the vague statements of luxury specific such that they're not puffing. And the district court seemed to rely on viewing the model home, but the only testimony about the model home is, you know, two sentences from. Regna botany from what I saw that said, uh, it looked like it was put together very nicely. The yard was well kept. All the furnishings were there. I didn't see anything else about model homes that would make these luxury statements specific, so to speak. Yeah. I mean, I think that the model home makes it specific and I also think saying, where's that in the record? There's only two sentences of testimony in there that it was. Again, looked like it was put together nicely. That does not sound specific to me and that the yard was well kept where in the record. Can you point to testimony about the model home that made representations that were justifiably relied upon that were specific, such as, you know, whatever that the luxury statements are not vague. It wasn't just the, the model home. I would be my response to that. It was representations that. So there's nothing in the record from the model homes that you can point to. I cannot point to, as we stand here today, another sentence other than the couple of sentences that you are referring to judge. So the other context would be the marketing. Sure. The marketing. And like I said, some of it was pre and some of it was post, but pre build, there were conversations that Laura and Greg testified to that they had with different employees of NBR about certain things that they were promised and they didn't get. If your adversary ended their brief by asking that the case be reversed. Okay. Alternatively, they asked for a new trial. Now, if we disagree with you, which is the, which is the right way to go. A new trial. Okay. I thought you'd say. If I may just, I know we're way over here. If I could just briefly conclude, I would greatly appreciate that. I'd like to conclude with what the Supreme court of Pennsylvania. And I kind of alluded to this said recently in the Dwyer case for the third or fourth time in recent years, the court really has taken it upon itself to state that the UTP CPL is different, that it is a statutory remedy, that its purpose is not to be undermined. And it says that these cases are tough and that we want to encourage attorneys to take these cases and litigate these cases to protect consumers. We went the distance here. We prevailed and respectfully, nothing would be more consistent with the purposes of the UTP CPL than upholding the verdict in this case. Thank you. Thank you. Thank you. I'd like, if I made a start on the merits judge Chung, you're absolutely right about the luxury point. There is no evidence in the record that would support the conclusion that plaintiffs one saw a model home that had anything to do with either the residential community in which they ultimately purchased a property or the specific kind of home that they ultimately purchased. So that consideration, which was relied on heavily by the district court is plainly irrelevant as, as regards to the puffery issue. On top of that, opposing counsel said something to the effect of that. It's something to the effect of, well, what is this contract about if it's not luxury? And I think this is a really, really important point to stress for the court's consideration, because what's happening here is you have a purely subjective, incredibly vague term, like you pointed out judge Chung. And what you're being asked to believe is that NVR could enter into a contract that specifies in enormous detail what they are agreeing to provide. It could be a list of a hundred different specifically enumerated items. They could provide every single one of those enumerated items. And then a plaintiff can show up a couple of years later and say, I got a home. That's kind of luxurious, but in my subjective view, it just doesn't feel sufficiently luxurious so that I feel I got my benefit of the bargain. And therefore even the term, even though the term luxury has nothing to do with this contract. And even though NVR specifically said, we are not promising you anything that's not in this contract. The practical result of that is the plaintiffs can show up in court. A couple of years later, they can convince a jury that they didn't get a sufficiently luxurious home, whatever that means. And the practical result is NVR now has to pay them more than the purchase price of the home. And they get to keep the home. Now that is a result that is not countenanced by any principle of law, by anything in the party's purchase agreement. And on top of that, why would any business ever build a home if that were the law? And so the fundamental error in the district court's reasoning is it's assumption that there's something about this court's decision in Earl v. NVR that stands for this remarkably broad proposition that parties cannot contract around liability. And we know from just every single day experience that parties contract around liability every single day, and they do it with respect to statutory claims and with respect to constitutional claims. And I say again, that if you want a functioning economy, you can't have a situation where businesses can't provide themselves with a modicum of protection. So, but they argue that the CPL claim was included within the warranty provisions. That's a great point, Judge Fischer. They do argue that. And what's happening here is that they are running away from the way that they tried this case to the jury. And it's a radically different theory than the theory they put in front of the jury. And don't take my word for it. I would respectfully direct the court's attention just by way of example to documentary 90 at page 65. What you'll find there is plaintiffs telling the jury, not with respect to the catch-all provision of liability, but with respect to a provision that has to do with repairs that are purportedly substandard and not up to the standard agreed to in writing. So not the catch-all provision. And what they say is that the jury should base liability under that different prong, not in part, but in whole 100% on the luxury claim. And why is that so important? Why do they say that? Because their argument is there's a website out there in which Penn VR said that they're in the business of making luxury homes. And that is therefore a written promise, a written guarantee. And that argument, of course, infects all three prongs of CPL liability that are invoked. It infects prong number 14, which contrary to the theory they're now propounding on appeal, is not just about a warranty. It's a written warranty or a guarantee. And then the same thing with paragraph 16. It's not just a warranty. It's any kind of written promise about the standard of quality. And their argument is, well, it's not up to quality. Why? Because we were promised luxury and we didn't get that luxury. So this luxury theory absolutely pervades their entire theory of the case. They mentioned it something like a hundred times during the course of the trial. It's basically a two-legged stool. And if you take one of those legs out, then you cannot be at all confident that the stool stands. So if you're right on the argument that the CPL claim is governed by the one-year statute of limitations and it's not covered by the warranty, what are we left with? So what you're left with is the CPL claim is out and there's no CPL liability. That means what plaintiffs get is what they should have gotten, which is enforcement of the party's contract. And that is damages under the limited warranty. And Your Honor, plaintiffs asked the jury in closing argument, they said, if there's a breach of the limited warranty, we want you to give us $146,000 in damages. And the jury said, we're giving you $23,000 in damages for the limited warranty claim. And we haven't appealed to that part of the judgment. That's the part you didn't appeal. That's the part we didn't appeal. And we don't have any problem, even though we respectfully disagree with the jury's findings. We think that the jury had a right to make those findings and we have a right to be held to our contractual obligations. What we should not be subject to is a claim that we have to pay plaintiffs more than the purchase price of the home because the dominant theory at trial in front of the jury is that they didn't get a sufficiently luxurious home, whatever that means. I do want to go to a couple of points on the jurisdictional issue, if I may. You're out of time. But if you want to say something very briefly, so I could make three points really quick. Okay, so point number one, counsel said there was no waiver of any argument under rule 4A4. And I would quote to you from page three of their answer brief. Laura and Greg's motion for travel damages extended the time for appeal under rules 4A4. So that's their concession. And you'll find identical language on page five of their answer brief. Number two, they said that it doesn't make a difference whether 4A4 is jurisdictional or a claims processing rule. Well, that's not what this court has said. For example, in Lizardo, as you point out, Judge Fischer, on page 277, the language from Lizardo is according to the Supreme Court in Bowles, quote, court promulgated rules are distinct from limits enacted by Congress and should not be treated as jurisdictional rules. Number three, they said that courts have not ruled on whether 4A4 is a claim processing rule. That's not true. And then finally, Judge Mobley, the CIA, in our reply brief, here's the language from Mobley. The timing rule at issue here, federal rules of civil procedure 6B2 and 59E, and federal rule of appellate procedure 4A4, exactly the rules that are at issue here, are claim processing rules. They cite a bunch of authority. And finally, Judge Chigaris, he said, what about the amended judgment? What effect does that have? And counsel said, it has no effect. Because that means that we should have appealed the order granting their motion for treble damages before there was an order granting their motion for treble damages. We could not possibly have done that. So their position that we... Well, you know, the problem with that, Judge Chung, is that this court and the Supreme Court tell litigants every single day that litigants should respect the final judgment rule and the policy against piecemeal appellate adjudication of claims. Well, the prophylactic notice of appeal, that injects all manner of chaos and confusion into the proceeding. It divests the district court of jurisdiction to do exactly what the district court has said that it has to do, which is that there's more work to be done on the CPL claim. So you'd have a situation in which this court is looking at one appeal from liability under the CPL and another appeal from treble damages under the CPL when the underlying facts are different. That's exactly what litigants are told not to do every day. Thank you. We will take this case under advisement. Just to be more clear on our request for additional briefing. Let's go with 3,000 words due two weeks from today at 5 p.m. OK? So it's 3,000 words two weeks from today at 5 p.m. OK? And well, if counsel are amenable, we'd like to greet you at CIFOR. Thank you for your excellent work and I'll tell you publicly thank you for your excellent argument today and briefing. We're grateful and we'll take a very brief recess. OK?